## KELLER v. GUNN SUPPLY CO.

No. 3984. Decided November 28, 1923. (220 Pac. 1063.)

MASTER AND SERVANT—EMPLOYER NOT LIABLE FOR ASSAULT BY EMPLOYÉ NOT IN LINE OF DUTIES. A restaurant proprietor *held* not liable for injuries caused by employé's assault on patron, caused by quarrel between employé and patron as to whether the patron had insulted the employé's wife; the act of the employé in such case not being within the scope of his employment or in the course of his duties.

Appeal from District Court, Second District, Weber County; *George S. Barker*, Judge.

Action by M. F. Keller against the Gunn Supply Company. Judgment for defendant, and plaintiff appeals.

AFFIRMED.

*Samuel C. Powell,* of Ogden, and *Marioneaux & Beck,* of Salt Lake City, for appellant.

*Wilson McCarthy,* of Salt Lake City, for respondent.

FRICK, J.

The plaintiff commenced this action in the district court of Weber county to recover damages for personal injuries which he alleged he sustained on September 27, 1922, by being "struck on the top of the head with an ice pitcher" by one of defendant's employés while the latter was in the due course of his employment, and while plaintiff was eating a meal in defendant's eating car at Ogden, Utah. The defendant answered the complaint, in which, after making certain denials, it averred that an altercation occurred between the plaintiff and one C. E. Winters, an employé of the defendant, "but that this defendant was in no way responsible for such altercation, and that said acts and conduct on the part of said C. E. Winters were beyond and outside of the scope of his employment." How the altercation and the assault occurred is clearly reflected in a statement made by plaintiff on the 1st day of October following the altercation. After alluding to the "accident," as plaintiff puts it, he stated:

"Was sitting at table third place from end on northwest side of table on the eating car of Gunn Supply Company in Ogden Union Yards, located in north end of yards. Was in act of taking a piece of meat off a meat platter when C. E. Winters, a chef in the employ of Gunn Supply Company, came in, and, using profanity, asked me: 'Your're the ——— who insulted my wife, aren't you?' In reply I answered, 'No, sir; I didn't talk to her.' At that C. E. Winters picked up a pitcher containing ice water and hit me on the head with it, the impact causing the meat platter to fall from my hands. This he repeated three times, when his wife called out: 'That

isn't the fellow, Jack.' This occurred about 6 p. m. on September 27, 1922. (Signed) Melvin Keller."

The foregoing statement was addressed to "Mr. O. Kirkland, Chief Joint Inspector," who, the evidence disclosed, was employed as an inspector at the Union Depot at Ogden, Utah. The statement is in plaintiff's own handwriting.

There was with plaintiff at the time he was struck by Winters one Clarence L. Brinker, who also made a statement which is in his own handwriting. Mr. Brinker's statement is as follows:

"I was asking if they were going to serve meals there after October, and no one would answer, and I then turned to Mrs. Winters' mother and asked her, and she started to tell me, and her daughter spoke up and said No,' in a very disagreeable manner; and I said, 'Oh, thank you;' and she said, 'Don't get fresh;' and not another word was said. Mrs. Winters walked into the kitchen, and in a minute or two Mr. Winters walked in and started for my friend, Mr. Keller, who was across the table from me. He picked up a pitcher of water, and said, 'Are you the ——— that insulted my wife?' and then struck him. When he struck him the pitcher fell out of his hand, and he grabbed another one and struck at him. Mr. Keller was knocked unconscious by the first blow. His wife then said, 'That isn't the one;' and he started around the table after me, grabbing a pitcher as he came. His wife got in his way, and succeeded in stopping him, and he stood behind her with the pitcher above his head, ready to strike me or throw it at me. Then he went to the kitchen, and I took care of Mr. Keller, taking him to Dee Hospital.

"(Signed) Clarence L. Brinker,
"Car Inspector, 3-11 Shift."

Both statements were introduced in evidence without objection, and we have here reproduced them because they were made when the occurrence was fresh in the minds of those making them, because they were made in the handwriting of those making them, and because they clearly reflect, in substance, at least, just what occurred, at the time of the injury, between plaintiff and Winters.

It is true that at the trial plaintiff's testimony is somewhat more favorable to himself, in that he attempts to make it appear that Winters inflicted the injury upon plaintiff because it was Winters' duty to maintain order in the eating car The evidence as a whole, however, does not bear out such a conclu-

sion. Upon the contrary, it is clear that Winters committed a most brutal assault on the plaintiff, and in doing so was manifestly acting entirely outside of the scope of his employment, and because of some assumed grievance of his own against plaintiff, just as appears from the foregoing statements.

After the plaintiff had produced his evidence the court denied a motion for nonsuit, but after the defendant had produced its evidence and both sides had rested the court directed the jury to return a verdict for the defendant no cause of action. Plaintiff excepted to the instruction directing a verdict. Judgment was accordingly entered upon the verdict, and plaintiff appeals. He here insists that the court erred in directing a verdict. In this connection plaintiff's counsel contended that it was the duty of Winters to maintain order in defendant's eating car, to compel disorderly persons to be orderly, and in case they refused to comply with his orders to eject them from the car, and that in discharging those duties he was clearly acting within the scope of his employment.

For the purposes of this case we may well concede counsel's contention that, if Winters was acting within the scope of his employment, the defendant would be liable for his acts. The difficulty, however, is that counsel's statement has no application to the instant case. The altercation did not arise by reason of an attempt by Winters to maintain order. No one in the car, so far as the evidence discloses was guilty of any disorderly conduct which called for any action either positive or negative on the part of Winters. Winters was prompted to, and did, commit the assault on plaintiff for no other reason than that he thought plaintiff had made some remarks to Winters' wife at which the latter took offense. The assault was clearly outside of the scope of Winters' employment, and was prompted by some fancied personal grievance of Winters'. The court was therefore clearly justified in withdrawing the case from the jury.

Plaintiff's counsel, with commendable frankness, concede that they have found no case which in its facts is like the case

at bar, but they insist that, if Winters was acting in the course of his employment, the defendant is liable. They cite au· thority to that effect to which it is not necessary to refer.

Defendant's counsel, in his brief, however, cites several cases which in principle are not distinguishable from the case at bar, and in all of which it is held that under facts and circumstances like those in this case the offending servant was not acting within the scope of his employment, and hence the employer is not liable for the servant's tortious acts.

In *Hardeman* v. *Williams*, 150 Ala. 415, 43 South. 726, 10 L. R. A. (N. S.) 653, in stating under what circumstances an employer is liable for the tortious acts of his servant, the court said:

"The act (of the servant) must be, not only within the scope of his employment, but also committed in the accomplishment of objects within the line of his duties, or in and about the business or duties assigned to him by his employer."

In *Clancy* v. *Barker*, 131 Fed. 161, 66 C. C. A. 469, 69 L. R. A. 653 the question is exhaustively considered by Mr. Justice Sanborn, and, under the rule there stated which is supported by numerous authorities, the defendant in this case cannot be held liable for Winters' act in assaulting the plaintiff.

*Brown* v. *Boston Ice Co.*, 178 Mass. 108, 59 N. E. 644, 86 Am. St. Rep. 469, is another well-considered case in which the rule respecting an employer's liability for a servant's tortious acts is clearly stated, and, in view of the decision in that case, it is again clear that the defendant here is not liable for Winters' acts. To the same effect is *McCarthy* v. *Timmins*, 178 Mass. 378, 59 N. E. 1038, 86 Am. St. Rep. 490. For an instructive case see *Goodloe* v. *Memphis & Charleston R. R. Co.*, 107 Ala. 233, 18 South. 166, 29 L. R. A. 729, 54 Am. St. Rep. 67. See, also, *Crelly* v. *Missouri & Kansas Tel. Co.*, 84 Kan. 19, 113 Pac. 386, 33 L. R. A. (N. S.) 328, and *Rahmel* v. *Lehndorff*, 142 Cal. 681, 76 Pac. 659, 65 L. R. A. 88, 100 Am. St. Rep. 154.

In view of the undisputed facts in the case at bar and the law applicable thereto, but one conclusion is permissible, and

that is that the judgment of the district court should be, and it accordingly is, affirmed, with costs.

WEBER, C. J., and GIDEON, THURMAN, and CHERRY, JJ., concur.