Duvaul T. PERSON, Appellant,

v.

CHILDREN'S HOSPITAL NATIONAL MEDICAL CENTER, Appellee.

No. 88–1207.

District of Columbia Court of Appeals.

Submitted July 19, 1989.

Decided Aug. 18, 1989.

Patrick G. Merkle, Washington, D.C., was on the brief for appellant.

Richard W. Boone and Claire Lee Reiss, Arlington, Va., were on the brief, for appellee.

Before NEWMAN, FERREN, and FARRELL, Associate Judges.

FERREN, Associate Judge:

Appellant, Duvaul Person, sued Children's Hospital National Medical Center, the appellee, for assault and battery resulting from an incident in which the Hospital's security guards removed Person from the building believing he was intoxicated. The trial court granted the Hospital's motion for summary judgment. On appeal, Person argues that a disputed fact—whether he told the security guards he was suffering from a diabetic crisis and therefore was not intoxicated—precludes summary judgment. We agree and reverse.

I.

The parties agree on most of the facts leading up to the encounter between Person and the security guards. Person was waiting in the lobby of the Hospital for a friend and her daughter when he began suffering from a diabetic crisis. He left the lobby to go to the cafeteria but felt weak and returned to the lobby. On his return, Person had trouble walking. The parties agree that, at this point, Person appeared to be intoxicated because of his behavior and because he was experiencing a condition known as ketosis, which produces an odor on the breath that can be mistaken for alcohol.

The parties disagree, however, on the actual circumstances of the encounter. Person testified, in a deposition filed with the trial court, that after he returned to the lobby the next thing he knew the guards were picking him up. Person further testified that he told them he was diabetic and needed help but that he could not remember the guards' communicating any response. According to Person, the guards held him under his armpits and, with Person bearing some of his own weight, led him out of the Hospital.

In a deposition filed with the trial court one of the security guards, Eugene Oliver, testified that he and another guard had approached Person, who was leaning against one of the trees in the lobby, and asked him if he was lost or injured or needed assistance. Oliver added that Person was incoherent and only said "ahhh" in response. After more questions, according to Oliver, Person replied that he was looking for his car and that it was on Michigan Avenue. The guards then helped Person out to the street but could not see a car. Oliver asked if Person was trying to go home, and, according to Oliver, Person replied "yes." Person then walked over to the bus stop and sat down. The guards got another call at this point so they left Person sitting at the bus stop. Oliver testified that Person never asked for help, nev-

er said he was dizzy, and never said he was a diabetic.

## II.

▇ The Hospital argues that there is insufficient evidence of assault and battery because the guards were trying to help, not harm, Person and because they made only minimal contact with him. Person contends there is at least a factual dispute as to whether the evidence tends to show an assault and battery. We agree with appellant. A battery is "harmful or offensive contact with a person, resulting from an act intended to cause [that person] ... to suffer such a contact...." KEETON, DOBBS, KEETON & OWEN, PROSSER AND KEETON ON TORTS § 9 (1984). An assault results from apprehension of an imminent harmful or offensive contact, in contrast with the contact itself. *Id.* Even if the security guards acted to help Person and thus did not have sufficient intent to harm him, Person's testimony that the guards, without saying a word, led him out of the building raises at least a jury question whether any apprehension of this contact constituted an assault and whether the contact itself was offensive and thus a battery.

## III.

▇ The Hospital argued in its motion for summary judgment, and urges again on appeal, that even if the contact with Person constituted an assault and battery, the Hospital employees' actions were privileged. The Hospital stresses that it has the right and the duty to remove potentially dangerous individuals from the building for the safety of its patients. Accordingly, says the Hospital, as long as the security guards reasonably believed intervention was necessary and used reasonable means to intervene, the Hospital is protected by a privilege against an assault and battery claim. Person agrees with this statement of the law but argues that his statement to the guards that he was suffering from a diabetic crisis raises a jury question as to whether the guards' means of removing him were reasonable.[1] We agree with appellant.

▇ While not previously recognized in this jurisdiction, we now adopt the rule generally in force in other jurisdictions that a possessor of land has a qualified privilege to use force to remove someone else from the property. *See Ramirez v. Chavez,* 71 Ariz. 239, 241, 226 P.2d 143, 145 (1951); *Haworth v. Elliott,* 67 Cal.App.2d 77, 82–83, 153 P.2d 804, 807 (2d Div.1944); *Maddran v. Mullendore,* 206 Md. 291, 299, 111 A.2d 608, 612 (1955); *Anderson v. Jenkins,* 220 Miss. 145, 151, 70 So.2d 535, 538 (1954); *Griego v. Wilson,* 91 N.M. 74, 76, 570 P.2d 612, 614 (1977); *Scheufele v. Newman,* 187 Or. 263, 270, 210 P.2d 573, 576 (1949); *Hughes v. Babcock,* 349 Pa. 475, 478, 37 A.2d 551, 553 (1944); *see also* 6A C.J.S. *Assault & Battery* § 24 (1975). This privilege is described in the RESTATEMENT (SECOND) OF TORTS § 77 (1965):

> An actor is privileged to use reasonable force, not intended or likely to cause death or serious bodily harm, to prevent or terminate another's intrusion upon the actor's land or chattels, if
>
> (a) the intrusion is not privileged or the other intentionally or negligently causes the actor to believe that it is not privileged, and
>
> (b) the actor reasonably believes that the intrusion can be prevented or terminated only by the force used, and
>
> (c) the actor has first requested the other to desist and the other has disregarded the request, or the actor reasonably believes that a request will be

---

1. The Hospital appears to argue that Person waived the argument that the means of removing him were unreasonable by failing to file an opposition to the Hospital's motion for summary judgment. The depositions of Person and Oliver were filed with the trial court before the motion for summary judgment, however, and thus were part of the record the trial court considered in granting summary judgment.

Even though the motion for summary judgment was unopposed, the trial court had an obligation to examine the record and confirm that there was no genuine issue of material fact and that the movant was entitled to judgment as matter of law. *See Kurth v. Dobricky,* 487 A.2d 220, 224 (D.C.1985). We therefore must decide whether summary judgment was appropriate on the record before the trial court.

useless or that substantial harm will be done before it can be made.

■ In applying this rule to the present case, we note that, although Person initially was an invitee and therefore was legally inside the Hospital, the Hospital was privileged to revoke that invitation and force Person to leave—provided the Hospital used reasonable means to remove Person. Use of force is not privileged if the intrusion can be prevented or terminated in some other way, *see id.* comment g, such as by asking the intruder to leave, *id.* § 77(c). In any event, the means of removal will be unreasonable if the harms caused to the intruder will not be "appropriate in kind and proportionate in extent to the value of the actor's interest protected, and the character and extent of the invasion which it is designed to prevent or terminate." *See id.* comment i; *Maddran,* 206 Md. at 300, 111 A.2d at 612 (force must be "suitable and moderate in any particular case"). Accordingly, because the law values human safety over property rights, force calculated to cause serious bodily harm or death will be excessive unless the intruder threatens to cause serious bodily harm or death to the actor or to a third person whom the actor is privileged to protect. *See* RESTATEMENT (SECOND) OF TORTS § 79; KEETON, DOBBS, KEETON & OWEN, *supra,* at § 21. Furthermore—and of special significance here—a possessor of land is not privileged to use even the slightest force to expel an intruder "if the possessor knows or should know that the intruder's condition or the surrounding circumstances are such that his [or her] expulsion will cause him [or her] death or serious bodily harm." RESTATEMENT (SECOND) OF TORTS, § 77 comment i.

Both parties agree that the Hospital was initially entitled to confront Person and to seek his removal. There is a conflict in the testimony, however, as to whether the guards were told Person was having a diabetic crisis. Person testified that he told them so; the guards testified that he did not. If the jury were to believe that Person told the guards he was suffering a diabetic crisis, then there would be another critical jury question: whether the means used by the guards in removing Person could be reasonably perceived to threaten Person with serious bodily harm or death and thus were excessive under the circumstances.

In granting a motion for summary judgment, the trial court must determine whether there is a genuine issue of material fact remaining for trial or whether the moving party is entitled to judgment as a matter of law. *See McCoy v. Quadrangle Development Corp.,* 470 A.2d 1256, 1258 (D.C.1983). On review, our function is to determine whether any relevant factual issue remains, precluding summary judgment. *Id.* at 1259. Based on this record, we cannot say there is no genuine issue of material fact. The Hospital was not entitled to judgment as a matter of law. We therefore reverse and remand for trial.

*Reversed and Remanded.*