# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 22-7167

September Term, 2023

FILED ON: AUGUST 9, 2024

DIANA C. VALLE, ET AL.,
                APPELLANTS

v.

ANTONIS KARAGOUNIS, GOVERNOR, ET AL.,
                APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-03764)

Before: PILLARD and WILKINS, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the judgment of the District Court be **AFFIRMED**.

Plaintiffs—three separate groups of individuals—sued Rewind by Decades, a Washington, D.C., restaurant, after being required to prepay for their meals. They alleged race discrimination and various other claims. The District Court granted summary judgment to Defendants as to all claims. For the reasons outlined below, we affirm.

### I.

### A.

Because we are reviewing the District Court's grant of summary judgment to Defendants, we "take the following facts from the evidence and read them in the light most favorable to" Plaintiffs, the non-moving party, "drawing all reasonable inferences in [their] favor." *Cruz v. McAleenan*, 931 F.3d 1186, 1189 (D.C. Cir. 2019).

This case concerns the experiences of eight Plaintiffs at Rewind by Decades ("Rewind"), a restaurant in Washington, D.C., that is adjacent to a nightclub and is open until 3:00 or 4:00 a.m. most nights. In separate instances, three groups of Plaintiffs—(1) the Valle family, (2) Tibe and Spence, and (3) Sullivan and Williams—were asked by waitstaff at Rewind to pay in advance of receiving or finishing food they had ordered.

Appellants Diana C. Valle, Necty Gasca, Claudia I. Gasca LeBaigue, and Alejandra Plazas (the "Valle Plaintiffs"), a family of Latina women, visited Rewind at around 2:00 a.m. in January 2019. The Valle Plaintiffs were seated at a table and ordered food from their waitress. Before the Valle Plaintiffs received their order, their waitress asked them to pay for their food. When asked by the Plaintiffs why the family was being asked to prepay, the waitress stated that the restaurant was crowded and could get confusing, and that the restaurant had experienced "walk-offs." J.A. 73, 75, 87, 139. Valle and LeBaigue, upset at being asked to pay before receiving their order, told their waitress that the family's order should be canceled and that they were leaving. Rewind staff then informed the Valle Plaintiffs that they needed to pay for the food they had already ordered before leaving. When the Valle Plaintiffs attempted to exit the restaurant, Rewind staff followed them outside and argued with them. Rewind's manager then came outside and stated that the Valle Plaintiffs could leave.

Appellants Melle Poyry Tibe and Alexis Spence, who are Black, arrived at Rewind at 2:30 a.m. in February 2019. Tibe and Spence were seated at a table and ordered food from their waitress. After a half-hour had passed without receiving their food, Tibe and Spence asked their waitress where their food was. The waitress responded that she had never put their order in, as they had not paid for their food. When Tibe and Spence asked why they would need to prepay for their food, their waitress informed them that requiring prepayment was Rewind's "protocol." J.A. 303, 306, 351. Upset at being asked to prepay for their food, Tibe and Spence left Rewind.

Appellants Aliyah Y. Sullivan and Dwayne A. Williams, who are Black, attended a brunch buffet that Rewind offered on Sundays in November 2019. A waitress seated Sullivan and Williams at a table and informed them of the cost of the brunch. Williams and Sullivan then went to the buffet to get food and returned to their table. While Williams and Sullivan were eating, a waitress asked them if they were ready to pay for their food. Williams and Sullivan responded that they were still eating. Rewind staff members then returned to the table two more times while Williams and Sullivan were eating to ask whether they were ready to pay for their food. The third time that a Rewind staff member returned, Sullivan asked the staff member why she and Williams were being asked to pay. Speaking loudly, the staff member responded that prepayment was Rewind's "policy" and that this was just "how it works" at Rewind. J.A. 416. Sullivan and Williams paid for their food and departed Rewind.

**B.**

In December 2019, the Valle Plaintiffs, believing that Rewind had discriminated against them because of their race or national origin in asking them to prepay for their order, filed suit

against Rewind. In addition to Rewind, the Valle Plaintiffs named as defendants Antonis Karagounis and Panorama Productions. Karagounis is Rewind's Managing Partner. Panorama Productions is a "marketing, branding, and promotion company" owned in large part by Karagounis. J.A. 571.

The Valle Plaintiffs then twice amended their complaint to add claims asserted by Tibe, Spence, Sullivan, and Williams. Thus, Plaintiffs' Second Amended Complaint now includes claims by three groups of plaintiffs—the Valle Plaintiffs; Tibe and Spence; and Sullivan and Williams. All Plaintiffs brought discrimination claims under 42 U.S.C. § 1981; Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a; and the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1402.31(a)(1). In addition, all Plaintiffs brought claims for intentional infliction of emotional distress. Separately, the Valle Plaintiffs and Sullivan and Williams brought assault claims; they alleged that they were assaulted when Rewind staff reacted to their protests to prepaying for their food. The Valle Plaintiffs alone brought a claim for false imprisonment.

On December 7, 2022, following the close of discovery, the District Court granted summary judgment to Defendants on all claims. *See Valle v. Karagounis*, No. 19-cv-03764, 2022 WL 17485644 (D.D.C. Dec. 7, 2022). Plaintiffs now appeal.

**II.**

This Court reviews "*de novo* a district court's decision to grant summary judgment." *Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006). Summary judgment is proper only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Arrington*, 473 F.3d at 333 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

**A.**

We first address Plaintiffs' claims that Rewind's requests that they prepay for their food constituted discrimination on the basis of race or national origin, in violation of 42 U.S.C. § 1981; 42 U.S.C. § 2000a; and the DCHRA, D.C. Code § 2-1402.31(a)(1).[1] We affirm the District Court's grant of summary judgment to Defendants as to Plaintiffs' discrimination claims.

To begin with, we hold that we lack jurisdiction over Plaintiffs' claims under Title II of the Civil Rights Act, 42 U.S.C. § 2000a. A plaintiff who files suit under Title II of the Civil Rights Act may seek only injunctive relief. *See* 42 U.S.C § 2000a-3(a). Plaintiffs have not demonstrated that they have standing to seek such relief. Plaintiffs may not premise their standing for injunctive relief on a past injury, and they have not established that the alleged discrimination is likely to

---

[1] Although it does not affect our analysis, we note that while Section 1981 covers discrimination on the basis of race, it does not cover discrimination on the basis of national origin. *See Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 n.1 (D.C. Cir. 2013).

3

recur. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103–05 (1983). Plaintiffs' complaint says nothing about the likelihood of the discrimination they allege happening again; indeed, they have not indicated that they intend to return to Rewind.

Turning to Plaintiffs' discrimination claims under 42 U.S.C. § 1981 and the DCHRA, we hold that the District Court did not err in granting summary judgment to Defendants.

Before the District Court, Defendants stated that they had a legitimate, nondiscriminatory reason for asking Plaintiffs to prepay for their food—that prepayment was Rewind's policy. Defendants explained that because Rewind is a busy restaurant and is open late, it requires patrons to either prepay when ordering food or to put down a credit card to open a tab. Similarly, Defendants stated that Rewind requires patrons attending its brunch buffet to either purchase a ticket in advance or to pay upon arrival; to do otherwise, Defendants elaborated, would make it too difficult for Rewind staff to keep track of who had paid for their food.

Plaintiffs do not materially dispute that requiring prepayment is Rewind's policy. Because Rewind has accordingly presented a "legitimate, non-discriminatory reason" for its actions, to survive summary judgment, Plaintiffs must produce "sufficient evidence for a reasonable jury to find" that Defendants' "asserted non-discriminatory reason was not the actual reason" and that Defendants "intentionally discriminated" against Plaintiffs. *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

Plaintiffs have failed to meet this burden. Crucially, no Plaintiff offered evidence that he or she had seen a white patron order food at Rewind without being asked to prepay. The closest Plaintiffs come is the testimony of Plaintiff Tibe, who stated that she had seen a table of white patrons pay after finishing eating their food. But Tibe also stated that she did not see those same white patrons order their food. So the white patrons could have opened a tab before ordering their food, in compliance with Rewind's policy. On this thin record, we think that no reasonable jury could conclude that Rewind did not require similarly situated white patrons to prepay for meals, even while imposing that requirement on Black and Latina patrons.

In addition to contending that Rewind applied its prepayment policy in a discriminatory manner, Plaintiffs also briefly suggest that the policy was adopted for discriminatory reasons. Plaintiffs explain that when Plaintiff Gasca asked a Rewind waitress why the Valle Plaintiffs were being asked to pay before receiving their order, the waitress responded that prepayment was Rewind's policy; the waitress allegedly elaborated that Rewind had "had problems with people of color before that had not paid and so that's why it's a policy now."[2] J.A. 160. But this statement,

---

[2] We note that, in its opinion granting summary judgment to Defendants, the District Court observed that Plaintiff Gasca made this claim "through an interpreter." *See Valle*, 2022 WL 17485644, at *2. On appeal, Plaintiffs argue that the District Court erred in dismissing Gasca's testimony on this basis. *See* Valle Br. at 40. Such a basis for rejecting Gasca's testimony would indeed be troubling, and to the extent that Defendants raised arguments that Gasca's testimony was unreliable solely on this basis, those arguments would be inappropriate. We do not, however, understand the District Court's conclusion to rely on this

4

alone, is insufficient to preclude summary judgment. The statement to which Plaintiffs point was offered by a Rewind waitress; Plaintiffs have not attempted to show that that waitress was a decisionmaker behind the adoption of the policy, or that she had any basis to know the reasons behind the adoption of the policy. *See Little v. D.C. Water & Sewer Auth.*, 91 A.3d 1020, 1025 (D.C. 2014) ("To prove discrimination by direct evidence, 'the plaintiff must present evidence of conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . .'" (quoting *Jung v. George Washington Univ.*, 875 A.2d 95, 111 (D.C. 2005)).

We accordingly affirm the District Court's grant of summary judgment to Defendants on Plaintiffs' discrimination claims.

**B.**

Plaintiffs also appeal the District Court's decision to grant summary judgment to Defendants as to their intentional infliction of emotional distress ("IIED") claims. "This tort requires conduct so 'outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Browning v. Clinton*, 292 F.3d 235, 248 (D.C. Cir. 2002) (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991)); *see also District of Columbia v. Tulin*, 994 A.2d 788, 800 (D.C. 2010). To prevail on a claim for IIED, a plaintiff must show "(1) 'extreme and outrageous' conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'" *Kotsch v. District of Columbia*, 924 A.2d 1040, 1045 (D.C. 2007) (citation omitted). The defendant's actions must also "proximately cause the plaintiff emotional upset 'of so acute a nature that harmful physical consequences might be not unlikely to result.'" *Sere v. Grp. Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982) (citation omitted).

In support of their IIED claims, the Valle Plaintiffs emphasize that Rewind staff publicly and falsely accused them of a crime, assaulted them, and chased them out of the restaurant when they refused to prepay for their food. Sullivan and Williams, like the Valle Plaintiffs, argue that they were publicly and falsely accused of a crime.

We affirm the District Court's grant of summary judgment to Defendants as to all three groups of Plaintiffs' IIED claims. As an initial matter, Plaintiffs have forfeited any challenge to the District Court's grant of summary judgment as to Tibe and Spence's IIED claims by failing to raise any argument regarding those claims in their opening brief. *See Al-Tamini v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("A party forfeits an argument by failing to raise it in his opening brief."). As to the Valle Plaintiffs' and Sullivan and Williams's claims, we conclude that, even assuming that all of the conduct those Plaintiffs point to is true, the conduct does not amount to IIED. As this Court has explained, the tort of IIED "is reserved for truly outrageous behavior." *Browning*, 292 F.3d at 248. IIED has been found where, for example, "the defendant gave the

basis, notwithstanding its offhanded reference to the interpreter. Rather, we understand the District Court to deem Gasca's account to be insufficient, on its own, to withstand summary judgment.

plaintiff's home address to a third person who the defendant should have expected would . . . threaten the plaintiff's life," *id.* (citing *Homan v. Goyal*, 711 A.2d 812, 818–20 (D.C. 1998)), and where a landlord hired workers to harass and intimidate his tenants when the tenants were on a rent strike, *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 934–35 (D.C. 1995). The conduct to which Plaintiffs point is, while perhaps objectionable, not "outrageous." *Browning*, 292 F.3d at 248.

## C.

We turn next to the assault claims pressed by the Valle Plaintiffs and Sullivan and Williams. The tort of assault involves intentionally putting another in apprehension of an immediate and harmful or offensive contact. *See Madden v. D.C. Transit Sys., Inc.*, 307 A.2d 756, 757 (D.C. 1973); *see also Person v. Child.'s Hosp. Nat'l Med. Ctr.*, 562 A.2d 648, 650 (D.C. 1989). To prevail on their assault claims, Plaintiffs must show (1) that Defendants acted intending to cause a harmful or offensive contact or an imminent apprehension of such a contact, (2) that Plaintiffs were put in reasonable apprehension of such contact, and (3) that a reasonable person in Plaintiffs' position would have experienced the same apprehension. *See, e.g.*, STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA § 19.01 (Richard W. Stevens ed., 2024 rev. ed. 2024); *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 92 (D.D.C. 2010); *Collier v. District of Columbia*, 46 F. Supp. 3d 6, 14 (D.D.C. 2014).

The Valle Plaintiffs argue that they reasonably apprehended a harmful or offensive contact as a result of the "intimidating and aggressive" actions of Rewind's staff in response to the Valle Plaintiffs' refusal to pay for their food. Valle Br. at 47. The Valle Plaintiffs emphasize that two Rewind staff members blocked their path out of the restaurant and that Rewind staff stood close to the Plaintiffs.

We conclude that no reasonable jury could find that the Valle Plaintiffs were assaulted by Defendants. At worst, it appears that Defendants threatened to call the police on the Valle Plaintiffs and may have gotten physically close to them. Nothing about that alleged conduct indicates that Defendants *intended* for their conduct to cause apprehension of a harmful contact, nor that it would appear to a reasonable person that a harmful contact was actually "imminent." *Person*, 562 A.2d at 650. The alleged conduct does not amount to assault.

Sullivan and Williams's assault claims fare no better. Sullivan and Williams argue that they were assaulted when, after they refused to pay for their brunch, a male Rewind staff member approached their table and, in a raised voice, demanded that they prepay for their meal. On those thin facts, no reasonable jury could conclude that Sullivan and Williams were put in reasonable apprehension of a harmful contact.

We accordingly affirm the District Court's grant of summary judgment to Defendants as to the Valle Plaintiffs' and Sullivan and Williams's assault claims.

6

**D.**

The Valle Plaintiffs alone brought a claim for false imprisonment and now challenge the District Court's grant of summary judgment to Defendants. "A successful claim of false imprisonment requires a plaintiff to establish (1) the detention or restraint of one against his will and (2) the unlawfulness of the detention or restraint." *Doe v. Safeway, Inc.*, 88 A.3d 131, 132 (D.C. 2014); *see also Faniel v. Chesapeake & Potomac Tel. Co. of Md.*, 404 A.2d 147, 150 (D.C. 1979). To constitute detention, the "restraint of [a plaintiff's] freedom of movement . . . must have been total." *Faniel*, 404 A.2d at 151. "In determining whether particular conduct constitutes false arrest or imprisonment it is not the subjective state of mind of the plaintiff but, rather, the 'actions or words of the defendant [which] must at least furnish a basis for a *reasonable* apprehension of present confinement.'" *Dent v. May Dep't Stores Co.*, 459 A.2d 1042, 1044 (D.C. 1982) (alteration in original) (citation omitted). And it is "not enough for [a] plaintiff to feel 'mentally restrained' by the actions of the defendant." *Faniel*, 404 A.2d at 151 (citation omitted). "Submission to the mere verbal direction of another, unaccompanied by force or threats of any character does not constitute false imprisonment." *Id.* at 152. "[F]alse imprisonment historically has been viewed as an intentional tort; . . . only an act intended to impose confinement or known by the actor to be substantially certain of doing so generates the common law tort of false imprisonment." *Johnson v. United States*, 547 F.2d 688, 692 (D.C. Cir. 1976) (per curiam).

On appeal, the Valle Plaintiffs emphasize that their deposition testimony shows that Rewind's staff blocked their exit from Rewind when the Plaintiffs tried to leave and that, when the Plaintiffs did leave, Rewind's security guards "chased them into the street, and trapped them outside the restaurant." Valle Br. at 57. The Valle Plaintiffs also note that, when Rewind's manager joined them and Rewind's "bouncers" outside, the manager told the bouncers to "let them go." Valle Br. at 10, 57.

We hold that no reasonable jury could conclude from the record that the Valle Plaintiffs were falsely imprisoned by Defendants. For starters, the Plaintiffs have not shown that Defendants actually restrained them. The Valle Plaintiffs argue that Rewind's "bouncers" blocked their path out of the restaurant, but the record also reflects that the Valle Plaintiffs were, in fact, able to leave Rewind. And there is no evidence that the Valle Plaintiffs were prevented from leaving while they were outside of Rewind; Plaintiffs do not allege that they tried to walk away or even objected to speaking to Rewind staff outside of the restaurant. *See Faniel*, 404 A.2d at 153 (holding that a plaintiff had not shown false imprisonment where the plaintiff did not "object" or "manifest a desire to leave").

We affirm the District Court's grant of summary judgment to Defendants as to the Valle Plaintiffs' false imprisonment claim.

\* \* \*

7

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc.  *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:     /s/
Daniel J. Reidy
Deputy Clerk